UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAVON PEMBERTON | ) | No. 4:20-cr-40023-TSH |
| | ) | |
| Defendant | ) | |
| | ) | |

_____

**FINDINGS AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS**

**August 10, 2021**

**Introduction**

The Defendant Lavon Pemberton is charged with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) (Count I), and possession with the intent to distribute marijuana in violation of 21 U.S.C. §841(a)(1) and (b)(1)(D) (Count II). He has moved to suppress from the introduction into evidence against him at trial physical and testimonial evidence derived from a search of his motor vehicle and during his arrest. For the reasons set forth below, his motion is **denied**.

**Facts**

On May 14, 2020, Pemberton was driving a motor vehicle eastbound on the Massachusetts Turnpike when he was pulled over by Massachusetts State Police Officer James Melberg for speeding. Trooper Melberg estimated that Pemberton was driving approximately 100 mph. As Melberg approached the vehicle on the passenger side, he smelled an overwhelming odor of marijuana coming from the vehicle (the passenger's side window was down). He observed that Pemberton's eyes were red and that his hands were shaking. Further, Melberg saw marijuana paraphernalia in the passenger compartment including a grinder, wrapping papers, and a digital scale. Melberg asked Pemberton where he was going and

Pemberton struggled to respond to the question.  Pemberton initially said he was traveling to
Cape Cod.  Melberg pressed Pemberton for the name of the specific town to which he was going
and Pemberton responded that his destination was Wenham, which is located on the north shore
of Massachusetts.  Additionally, Melberg noticed that Pemberton was using his cell phone as a
GPS at the time, indicating he had entered a specific destination.

 Pemberton provided Melberg with a valid Massachusetts Driver's License and rental
agreement for the vehicle.  The rental agreement indicated that Pemberton had picked up the
vehicle approximately three hours earlier.  When Pemberton opened the glove box to retrieve the
rental agreement, Melberg observed a bag labeled "Slime Fuel."  Melberg claims to have noticed
a warning on the bag indicating that it contained cannabis.  Pemberton argues that it is highly
unlikely that Melberg was able to see the packet of "Slime Fuel," and more particularly that he
was able to observe the warning label.

Melberg informed Pemberton that the bag should be stored in the rear cargo compartment
of the vehicle and claiming that he had Pemberton's permission, he took the bag from the glove
box and placed it in the rear compartment. While removing the bag from the glove box, Melberg
observed that the bag was sealed, not merely closed and thus was not an "open container" that
required storage in the rear compartment.

Melberg checked Pemberton's license status and learned that his license was active and
that he was on federal probation for a firearm's case.  Melberg questioned Pemberton about his
probation status and during that conversation, Melberg claims that Pemberton admitted to having
smoked marijuana earlier in the day, explaining the smell was still on his clothes.  Melberg asked
Pemberton to submit to a roadside assessment to determine if he was impaired.  Pemberton
exited the vehicle, and performed the nine-step walk-and-turn and the one-leg-stand  tests
without issue.

A second officer, MSP Trooper Doug Grout arrived on the scene and Grout stood with
Pemberton and Melberg returned to the vehicle having decided to conduct a search.  As Melberg
approached the vehicle he found a clear plastic bag on the road surface below the driver's side

door of the vehicle containing three individually wrapped baggies containing a mixture of white and blue powder.  Melberg believed the substance was cocaine.

Melberg returned to Pemberton in order to handcuff him.  At that point Pemberton attempted to flee, running down the dirt area abutting the breakdown lane.  Grout was able to reach and stop Pemberton he was handcuffed.  Melberg claims that Pemberton blurted out that he was "sorry," that he had "got scared," and that there was "a gun, cash, and weed" in the car.  Pemberton disputes that he made these statements.  Pemberton had not yet been advised of his *Miranda* rights.

Melberg claims he told Pemberton to stop talking, walked him over to the cruiser, and administered *Miranda* warnings.  Pemberton then informed the troopers that they had pulled over the wrong car.  Pemberton allegedly stated that a white transit van, which had been driving directly behind Pemberton's vehicle was carrying "four kilos." Melberg also states that Pemberton asked to be removed from the view of the road because was concerned about a possible "trail car."

After Pemberton was secured, Melberg and MSP Trooper Matthew Gray, who had come to the scene to assist, searched Pemberton's vehicle.  Gray located a bag on the floor of the vehicle, immediately behind the center console.  Inside the bag was a loaded Ruger SR9 firearm, containing a total of seventeen rounds.  Hanging from the front passenger headrest, Melberg found a bag that contained five clear plastic bags filled with marijuana, a gray hat, and $5,720 in cash.   During booking, Pemberton admitted that individually wrapped baggies found outside the door of his vehicle contained cocaine and ecstasy.  Pemberton also stated that he planned to sell marijuana when he arrived at his destination.

## Discussion

The Fourth Amendment prohibits unreasonable searches and seizures. A warrantless search is *per se* unreasonable unless it falls within one of the few "specifically established and well-delineated exceptions."  *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967).  The government bears the burden of establishing the

lawfulness of the search.  *United States v. Lopez*, 380 F.3d 538, 543 (1st Cir. 2004) (citing *Mincey v. Arizona*, 437 U.S. 385, 390–91 (1978)).

## I.       Traffic Stop

A traffic stop is permissible under the Fourth Amendment when an officer has a "reasonable suspicion that a traffic violation has occurred." *United States v. Chaney*, 584 F.3d 20, 24 (1st Cir. 2009).  Following a stop, an officer's investigatory actions must be reasonably related to the stop itself unless there is a basis for expanding the investigation.  *United States v. Dion*, 859 F.3d 114, 124 (1st Cir. 2017).  If an officer's suspicions grow as the investigation unfolds, the officer's focus can shift, and he is permitted to increase the scope of his investigation. *Id.* at 125.

## II.      Automobile Exception

Under the automobile exception to the Fourth Amendment's warrant requirement, "police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the vehicle that is as thorough as a magistrate could authorize by warrant."  *United States v. Ross*, 456 U.S. 798, 800 (1982).  Probable cause exists when, based on reasonably trustworthy information, the police believe a person of reasonable caution would consider the facts and circumstances sufficient to indicate that evidence of a crime will be found.  *United States v. Silva*, 742 F.3d 1, 7 (1st Cir. 2014) (citing *Robinson v. Cook*, 706 F.3d 25, 32 (1st Cir. 2013).  The government bears the burden of demonstrating that police officers had a "belief, reasonably arising out of circumstances known to the seizing officer," that the vehicle contained evidence subject to lawful seizure and destruction."  *Lopez*, 380 F.3d at 543 (1st Cir. 2004) (quoting *Carroll v. United States*, 267 U.S. 132, 149 (1925).  The court's focus must be on what the police officers knew at the time they searched the vehicle.  *Id.* (citing *United States v. Goldman*, 41 F.3d 785, 787 (1st Cir. 1994).

I find that  Melberg had ample probable cause to search the vehicle, and therefore, that the automobile exception does apply.  Upon pulling Pemberton over and approaching the vehicle, Melberg encountered an "overwhelming" smell of marijuana and saw marijuana

paraphernalia in the passenger compartment.  Further, Melberg claims that Pemberton admitted to having smoked marijuana earlier that day and that the smell was still on his clothes. However, Pemberton had only rented the vehicle approximately three hours earlier and Melberg claims the smell of marijuana was overwhelming. Finally, Melberg found the bag containing what he believed was cocaine outside of the passenger's side door from which Pemberton had exited in order to perform the field sobriety tests.

### III.    Vehicle Search Incident to Arrest

Police are also permitted to search a vehicle incident to a recent occupant's arrest in two specific circumstances.  *Arizona v. Gant*, 556 U.S. 332, 346 (2009).  First, police may search the vehicle if the arrestee is within reaching distance of the passenger compartment at the time of the search.  *Id.*  Second, a search is permitted if it is reasonable to believe the vehicle contains evidence of the offense of arrest.  *Id.*  Absent one of these justifications, searching an arrestee's vehicle will be unreasonable without a warrant or proof that another exception to the warrant requirement applies.  *Id.* Having been lawfully arrested, Pemberton's voluntary admission regarding the vehicle's contents made it reasonable to believe that the vehicle contained evidence of the arresting offense.  Accordingly, under the second *Gant* justification, Melberg's subsequent search of the vehicle was permissible.  Therefore, the firearm, ammunition, marijuana, and cash discovered in the vehicle also constitute admissible evidence that will not be suppressed.

### IV.  The Statements Made by the Defendant

*Miranda* warnings are required whenever a person in custody is subjected to either express questioning or its functional equivalent.  *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980).  Words or actions by police that the police should know are reasonably likely to elicit an incriminating response for the subject constitute interrogation under *Miranda*.  *Id.* at 301. However, words or actions normally attendant to arrest or custody do not constitute interrogation.  *Id.*  Additionally, any statement given freely and voluntarily without any compelling influences is admissible in evidence. *Miranda v. Arizona,* 384 U.S. 436, 478 (1966).

Upon discovering the bag of cocaine on the ground beneath the driver's side door of the vehicle, Melberg had probable cause to arrest Pemberton.  While Melberg was attempting to handcuff Pemberton, Pemberton tried to flee and was stopped by the Troopers.   During this second attempt at handcuffing, Pemberton voluntarily admitted that the vehicle contained "a gun, cash, and weed."  Because Melberg had not taken any action beyond that which is normally attendant to arrest, this statement was not compelled by interrogation.  Therefore, it constitutes a voluntary statement that is admissible as evidence, despite Pemberton not yet having been *Mirandized* at the time it was given.  Accordingly, the statement should not be suppressed. Because I find that Pemberton's waiver of his Miranda rights was done freely and voluntarily, the statements made after Pemberton was Mirandized and while in police custody are admissible.

### Conclusion

For the reasons set forth above, the Defendant's Motion to Suppress is denied.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**